# Exhibit A

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** ("Settlement Agreement") is entered into between SunTiger, Inc. d/b/a Eagle Eyes Optics ("SunTiger") and FGX International Inc. and Stylemark, LLC (successor by conversion to Stylemark, Inc.) ("Stylemark") (together FGX International Inc. and Stylemark are referred to as "FGX"). SunTiger and FGX are sometimes referred to in this Settlement Agreement either individually as a "Party," or collectively as the "Parties."

## RECITALS

A. WHEREAS, on or about January 1, 2007, SunTiger as Licensor and Stylemark as Licensee entered a License Agreement, as amended on or about January 30, 2009 ("License Agreement"), providing certain rights and obligations concerning the sale of Licensed Products (as defined in the License Agreement).

B. WHEREAS, in or about November 2011, SunTiger agreed to and signed a Letter of Consent and an Amendment to the Letter of Consent, together which, among other things, gave consent to FGX's acquisition of the equity interests in Stylemark and control over continued sales of Licensed Products for a defined period of time, and established certain rights and obligations between the parties relating to the ongoing sales of Licensed Products (the parties' relationship as governed at various times by the License Agreement, Letter of Consent and Amendment to the Letter of Consent shall be referred to collectively as "the License Relationship").

C. WHEREAS, disputes have arisen between the parties concerning their respective rights, obligations and performance under the License Relationship, from the beginning of the License Relationship up through and including present date including without limitation disputes concerning the termination of the License Relationship, audit rights and obligations, royalties paid and/or owed on sales of Licensed Products, limitations on authorized sales of Licensed Products, and alleged unauthorized sales of Licensed Products and royalties or other damages allegedly owed for such sales ("License Relationship Disputes").

D. WHEREAS, SunTiger filed a Demand for Arbitration with the American Arbitration Association, a copy of which is attached as Exhibit A to this Settlement Agreement, asserting certain claims against FGX, allegedly arising out of the License Relationship Disputes ("Arbitration Claims").

E. WHEREAS, the Parties mutually seek to resolve their License Relationship Disputes, including without limitation the Arbitration Claims, and release each other from all past and future claims related to the License Relationship without incurring further legal fees and related expenses, and with neither Party acknowledging any liability to the other, or the validity or invalidity of any position taken in connection with the License Relationship Disputes.

**AGREEMENT**

**NOW THEREFORE,** in consideration of the promises contained herein, and for good and valuable consideration, receipt of which is acknowledged, the parties agree as follows:

1. **Non-Admission of Liability.** It is understood and agreed that this is a settlement of disputed claims and that the furnishing of consideration pursuant to this Settlement Agreement shall not be deemed or construed at any time or for any purpose as an admission of liability or wrongdoing by any Party in any manner whatsoever. Each party agrees to bear its own fees and costs with respect to the License Relationship Disputes, Arbitration Claims, and this Settlement Agreement.

2. **Settlement Payment**. Within three business days after the Effective Date of this Settlement Agreement (as defined in paragraph 21, below), FGX shall pay to SunTiger the sum of Ninety Thousand Dollars ($90,000.00) ("Settlement Payment"), payable to SunTiger Inc. by forwarding it by U.S. mail addressed to attorney Robert Freedman of Tharpe and Howell.

(a) Additional Provisions Regarding Settlement Payment. The Settlement Payment shall fully resolve all claims or potential claims by SunTiger in connection with the License Relationship Disputes, including without limitation the Arbitration Claims. FGX or its representative shall report such payment to SunTiger on a Form 1099 to be mailed care of attorney Robert Freedman of Tharpe & Howell. SunTiger acknowledges and agrees that neither FGX nor FGX's counsel has made any representation regarding the tax consequences of any amounts received by SunTiger pursuant to this Settlement Agreement. SunTiger understands that SunTiger shall be exclusively liable for payment of federal or state taxes, if any, required by law to be paid with respect to this Settlement Payment.

3. **Release by SunTiger.** SunTiger hereby releases and forever discharges FGX, and each and every Doe Respondent referred to in the Demand for Arbitration attached hereto as Exhibit A, including their parent companies, subsidiaries, affiliated entities, and their respective present and former trustees, members, officers, shareholders, owners, parent companies, subsidiaries, employees, agents, attorneys, insurers, successors, and assigns and each of them (hereinafter "FGX Released Parties"), from all claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, attorneys' fees, and other legal responsibilities, of any form whatsoever (hereinafter "Claims"), whether known or unknown, unforeseen, unanticipated, unsuspected or latent, which each party now owns or holds, or has at any time heretofore owned or held, by reason of any matter or thing arising out of or in any way related to the relationship between the parties up through and including the effective date of this Settlement Agreement, including without limitation any right or obligation arising from the License Relationship, the License Relationship Disputes, and Arbitration Claims.

4. **Release by FGX.** FGX hereby releases and forever discharges SunTiger and its present and former officers, owners, parent companies, subsidiaries, employees, agents, affiliated entities, attorneys, insurers, successors, and assigns and each of them (hereinafter "SunTiger Released Parties") from all Claims, whether known or unknown, unforeseen, unanticipated, unsuspected or latent, which each party now owns or holds, or has at any time heretofore owned

or held, by reason of any matter or thing arising out of or in any way related to the relationship between the parties up through and including the effective date of this settlement, including without limitation any right or obligation arising from the License Relationship, the License Relationship Disputes, and Arbitration Claims

**5. Dismissal of Demand for Arbitration; Covenant Not to Sue; Affirmation.**

(a) SunTiger represents that, within three business days after the Settlement Payment funds are received, SunTiger will file a notice of withdrawal of its Demand for Arbitration, in a form to be approved by FGX's counsel. SunTiger represents that it has not filed, initiated, or prosecuted (or caused to be filed, initiated, or prosecuted) any other lawsuit, complaint, request or petition for arbitration, charge, action, or other proceeding with respect to any claim within the scope of the release set forth in paragraph 3 of this Settlement Agreement.

(b) The Parties agree not to, directly or indirectly (by supporting, instigating or causing any other person or entity to), file a lawsuit in any court, or to demand arbitration, against each other based on any events, acts, or omissions released herein, through and including the effective date of this Settlement Agreement.

**6. Release of Unknown Claims.** The Parties acknowledge and agree that their rights under Section 1542 of the Civil Code of California are hereby expressly waived. Section 1542 reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Nothwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of Claims, the Parties expressly acknowledge that this Settlement Agreement is intended to include in its effect, without limitation, all Claims which the Parties do not know or suspect to exist in their favor at the time of execution hereof, and that this Settlement Agreement contemplates the extinguishment of any such Claims.

**7. Non-Use of the "Eagle Eye" and "Eagle Eyes" Names.** FGX shall make no further sale and/or distribution anywhere in the world of eyewear and packaging that bears, or refers to the names "Eagle Eye" or "Eagle Eyes" on the eyewear, or on any label or packaging for those products.

8. **Confidentiality.**

(a) The Parties agree that, except as required by law, order of a court, or in response to a subpoena or other legal process, or in connection with any action to enforce the terms of this Settlement Agreement, they shall not knowingly disclose, privately or publicly, the facts, circumstances and/or allegations of the License Relationship Disputes and Arbitration Claims or any of the terms or provisions of this Settlement Agreement ("Confidential Information"), to anyone other than their attorneys, accountants, tax and financial advisors, and taxing authority. The Parties agree that, prior to making a disclosure of Confidential Information pursuant to any law, order of a court, or in response to a subpoena or other legal process, they will provide each other ten business days notice consistent with the terms set forth in paragraph 11 below, in order to provide the other party an opportunity to take appropriate action to prevent disclosure. The parties further agree to take all reasonable steps necessary to ensure that confidentiality is maintained by any individual or entity referenced above to whom disclosure is authorized.

(b) The parties agree that if asked about the Arbitration Claims against FGX, the License Relationship Disputes, they will state only: "The matter has been resolved."

(c) Any provision of Evidence Code Sections 1115-1128 notwithstanding, this Settlement Agreement is binding and may be enforced by a motion under Code of Civil Procedure Section 664.6, or by any other procedure permitted by law in any applicable state or federal court with personal and subject matter jurisdiction over the Parties and their dispute.

(d) This Settlement Agreement is admissible and subject to disclosure for purposes of enforcing this Settlement Agreement pursuant to Code of Civil Procedure Section 664.6, or any other procedure permitted by law or rule of civil procedure in any forum in which this Settlement Agreement shall be enforced.

9. **Different or Additional Facts.** The Parties acknowledge that they might hereafter discover facts different from or in addition to those the Parties now know or believe to be true with respect to any of the Claims released herein, and expressly agree to assume the risk of possible discovery of additional or different facts, and agree that this Settlement Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

10. **Notification.** In the event that either party is asked or compelled to disclose or release any information regarding any of the-Released Parties, including but not limited to any Confidential Information, they will notify the other party in writing sent by overnight delivery, fax or email delivery and addressed in accordance with the requirements of this paragraph below as soon as practicable after a party learns of such request or order compelling disclosure, and in no event later than ten business days prior to making any disclosure. In any such event, the parties will disclose only that portion of such information as is legally required to be furnished and will exercise reasonable efforts to obtain confidential treatment for any information being disclosed. Any notice to be provided to the parties under this paragraph, or any other provision of this Settlement Agreement, shall be sent by overnight delivery, fax or email delivery and addressed as follows:

Notice to FGX: Robert Knychalski, FGX International Inc., 500 George Washington Highway, Smithfield, RI 02917, Fax – (401) 233-2404, Email – rknychalski@fgxi.com, with a copy to Steven Cowley, Duane Morris LLP, 100 High Street, Suite 2400, Boston, MA 02110, Fax – (857) 401-3090, Email – smcowley@duanemorris.com.

Notice to SunTiger: Robert Freedman, Tharpe & Howell LLP, Sherman Oaks, CA 91403, Fax – (818) 205-9944, Email - rfreedman@tharpe-howell.com

Delivery shall be deemed to have occurred on the date of delivery to the addressee(s) identified in this paragraph.

11. **Attorneys' Fees.** In the event that any civil action, litigation, arbitration, or other proceeding is instituted to remedy, prevent, or obtain relief from a breach of this Settlement Agreement, or arising out of a breach of this Settlement Agreement, the prevailing party shall recover reasonable attorneys' fees and costs incurred by such party in each and every such civil action, litigation, arbitration, or other proceeding, including but not limited to any and all appeals or petitions therefrom, in addition to any award of damages to such party.

12. **Warranties.** The Parties, and each of them, warrant: (i) that no other person or entity had or has or claims any interest in any of the Claims or settlement consideration covered by this Settlement Agreement; (ii) that they, and each of them, have the sole right and exclusive authority to execute this Settlement Agreement; and (iii) that they have not sold, assigned, transferred, conveyed or otherwise disposed of any Claims being released in this Settlement Agreement.

13. **Entire Agreement.** This Settlement Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof, and the terms and conditions contained herein shall inure to the benefit of, and be binding upon, the heirs, representatives, successors and assigns of each of the parties hereto. If any provision of this Settlement Agreement is held by a court of competent jurisdiction or arbitrator to be unlawful or unenforceable, the remaining provisions of this Settlement Agreement shall remain in full force and effect. All representations and warranties contained in this Settlement Agreement shall survive its execution, effectiveness, and delivery.

14. **Termination of the License Relationship.** The Parties acknowledge and agree that this Settlement Agreement sets forth the only remaining obligations between the Parties concerning all transactions, actions and conduct up through and including the effective date of this Settlement Agreement, and that the License Relationship, including without limitation the License Agreement as amended, the Letter of Consent and the Amendment to the Letter of Consent, is and are fully terminated, with no ongoing obligation or duties between the Parties of any kind.

15. **Voluntary Participation in this Agreement.** Each Party acknowledges that it has thoroughly discussed all aspects of its rights and this Settlement Agreement with its

attorney(s), that it has carefully read and fully understands all of the provisions of this Settlement Agreement, that it has been given a reasonable period of time to consider signing this Settlement Agreement, that it is voluntarily signing this Settlement Agreement, and that the signatories hereto have the capacity and authority in signing this Settlement Agreement to bind themselves or those on whose behalf they purport to sign this Settlement Agreement.

**16. Amendment.** No waiver, amendment or modification of this Settlement Agreement shall be effective unless in writing and signed by the Party against whom the waiver, amendment or modification is sought to be enforced. No waiver of any term, condition or default of this Settlement Agreement shall be construed as a waiver of any other term, condition or default.

**17. Agreement Jointly Drafted.** This Settlement Agreement is deemed to have been drafted jointly by the Parties. Any uncertainty or ambiguity shall not be construed for or against any Party based on attribution of drafting to any Party.

**18. Headings.** The headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter or otherwise affect the matters contained in this Settlement Agreement.

**19. Governing Law and Choice of Forum.** This Settlement Agreement shall be governed in accordance with the laws of the State of Florida. Should either party commence a lawsuit in a court of competent jurisdiction seeking to enforce, or requiring the interpretation of, this Settlement Agreement, any counterclaim to be asserted by any other party shall be filed in the same jurisdiction.

**21. Execution of Agreement and Effective Date.** This Settlement Agreement may be executed by the signatures of each of the parties hereto, or their authorized representatives, on multiple copies of this Settlement Agreement, including copies transmitted electronically by .pdf, or by facsimile, and shall be effective upon being so executed and delivered by all parties hereto ("Effective Date").

**22. Severability.** Should any term or provision of this Settlement Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction and if such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Settlement Agreement in full force and effect. The language of all parts of this Settlement Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

**IN WITNESS WHEREOF,** this Settlement Agreement is executed by the parties hereto on the date hereinafter indicated.

**SUNTIGER, INC.**

By: [signature]

Its: President/CEO

Date: 6/25/2014

**FGX INTERNATIONAL INC.**

By: [signature]

Its: EVP, General Counsel + Secretary

Date: 7/25/14

**STYLEMARK, LLC (SUCCESOR BY CONVERSION TO STYLEMARK, INC.)**

By: [signature]

Its: EVP, General Counsel + Secretary

Date: 7/25/14